Filed 11/10/21  P. v. Jauregui CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B312441 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20HWMH01953) |
| v. | |
| ERIC JAUREGUI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Harrison, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

The court extended the commitment of Eric Jauregui after conducting a bench trial on the People's Penal Code[1] section 2970 petition, finding that Jauregui was unable to manage his psychiatric symptoms without supervision and still presented a danger to society if released from custody. Jauregui challenges the order on the ground that the court failed to obtain a valid waiver of his right to jury trial. We disagree and affirm.

## BACKGROUND

Jauregui was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) after he entered his mother's bedroom and stabbed her. Jauregui suffers from schizophrenia and was committed as a mentally disordered offender (MDO). His commitment was set to expire on April 7, 2021. The People petitioned to extend Jauregui's commitment, arguing that his schizophrenia was not in remission and could not be kept in remission if his treatment were discontinued upon release.

At a pretrial conference on February 23, 2021, the court asked Jauregui, "Before I set the trial, I just want to make sure you understand you have the right to a court trial—that's with me or whoever would be sitting here; one person—or a jury trial with 12 people from the community. [¶] Do you give up your right to have a jury trial and, instead, have a court trial?" Jauregui replied, "No." The court asked, "You want to have a jury trial?" Jauregui replied, "Yes." Jauregui's trial counsel explained to him, "There's two types of trials. One with a judge; one with a jury. We . . . haven't gotten any jury trials for the last year, so I don't know how long you're going to have to wait for a

---

[1] All further statutory references are to the Penal Code.

jury trial. Set your matter for a court trial with the judge, and if you're not dangerous, you get released."[2] Jauregui replied, "Okay." His trial counsel asked Jauregui if he understood and he replied, "Yeah." Trial counsel then asked whether Jauregui gave up his "right to a jury trial so we can have a trial with the court by April." Jauregui replied, "Yes, sir." The court accepted the waiver, finding it knowing and voluntary.

On April 28, 2021, the court held a bench trial and admitted testimony from two mental health providers who agreed that, while Jauregui's symptoms had improved, he still presented a danger to the community if released and continued to need a high level of care. The court granted the petition and recommitted Jauregui for further treatment.

Jauregui appealed.

## DISCUSSION

Jauregui asks us to reverse the commitment order because the court failed to obtain a valid waiver of his right to jury trial. Jauregui contends that the court failed to inform him of his rights and ceded to his trial counsel the court's responsibility to personally obtain the waiver from Jauregui. He also contends that his trial counsel coerced him into waiving his right to a jury trial by informing him that no jury trials had been scheduled in the last year and that a bench trial would be set for an earlier date. While recognizing this is a close case, we find that the court obtained a valid jury trial waiver from Jauregui.

_____

[2] While the transcript is silent as to why no jury trials had been scheduled for the past year, both parties presume the lack of jury trials on calendar was due to circumstances caused by the COVID-19 pandemic.

The district attorney may petition the court to extend the involuntary commitment of an MDO following his or her release from parole. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1122; §§ 2970, 2972.) The court must advise the MDO of his or her right to a jury trial and "obtain a personal waiver of the defendant's right to a jury trial before holding a bench trial." (*Blackburn*, at p. 1125.)

A valid waiver of a jury trial should be made with full awareness of the nature of the right being waived and result from a free and deliberate choice. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.) That is, it must be knowing, voluntary, and not the product of coercion or intimidation. (*Ibid.*) While our Supreme Court has emphasized "the value of a robust oral colloquy" between the trial judge and a defendant (*id.* at pp. 169–170), there are no magic words that the court must say to obtain a knowing and intelligent waiver (*People v. Blancett* (2017) 15 Cal.App.5th 1200, 1205). However, the Supreme Court has recommended that trial courts advise defendants of the basic mechanics of a jury trial, "including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay*, at p. 169.) These recommendations are "not intended to limit trial courts to a narrow or rigid colloquy." (*Id.* at p. 170.) Ultimately, the court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that it obtains a knowing and intelligent waiver. (*Ibid.*) As the reviewing court, we look to the

totality of the circumstances to determine whether the defendant's waiver was knowing and voluntary. (*Id.* at p. 166.) In making our determination, we may consider a defendant's legal sophistication and prior experience with the criminal justice system. (*Blancett*, at p. 1206; *People v. Jones* (2018) 26 Cal.App.5th 420, 436–437.)

Here, based on the totality of the circumstances, we find that Jauregui's waiver was knowing and voluntary. While the waiver colloquy was brief and contained the bare minimum of information regarding the basic mechanics of a jury trial, both his counsel and the court explained the difference between the two types of trials.[3] Jauregui's trial counsel informed him that, in a bench trial, the judge would decide whether Jauregui was still dangerous and, if he was not, he would be released. These discussions took place in open court and the trial judge had the opportunity to correct any errors in trial counsel's representations, of which there were none. The record also shows that Jauregui understood his rights because he changed his mind in open court after his counsel explained the difference between the two types of trials and the likelihood that Jauregui might have to wait until an unknown date to receive a jury trial.

---

[3] Our Supreme Court recommends that a trial court should advise a defendant of the jury selection process and the unanimity requirement. Further, to ensure a waiver is intelligently made, a trial court may ask the defendant if he comprehends what the jury trial right entails, e.g., ask the defendant whether he has consulted with his attorney, whether counsel has explained the differences between a jury and a bench trial, and whether the defendant understands the right he is waiving. (*People v. Sivongxxay*, *supra*, 3 Cal.5th at p. 169.)

Moreover, Jauregui's extensive experience with the criminal justice system suggested he was legally sophisticated. In addition to his conviction for the qualifying offense of assault with a deadly weapon and initial commitment as an MDO in this case, Jauregui had an extensive criminal history that included arrests and convictions for various crimes dating back to 2003 and continuing through 2014.

We reject Jauregui's claim that his waiver was the product of coercion or an improper inducement. Jauregui asserts that his counsel coerced him into waiving his rights by informing him of the reality of the court's calendar in the midst of the COVID-19 pandemic. However, Jauregui's trial counsel had a duty to fully inform him of the current circumstances of the court's calendar and the likelihood of having a timely jury trial. Without this advisement, Jauregui could not make an informed decision whether to accept an earlier but definite date for a bench trial or wait and see if he could obtain a jury trial before his commitment ended.

Lastly, we reject the contention that the court improperly delegated its responsibility to personally obtain the waiver from Jauregui to his trial counsel. Jauregui relies on *People v. Blackburn*, *supra*, 61 Cal.4th at page 1117, which held that a trial court must obtain a personal waiver of jury trial from an MDO. In *Blackburn*, a settled statement of the relevant pretrial proceeding showed that defense counsel waived his client's appearance and stipulated to a bench trial. (*Ibid.*) The trial court conducted a bench trial and sustained the petition to extend the MDO's commitment. (*Id.* at p. 1118.) *Blackburn* found that a proper waiver could be obtained from counsel only if there was substantial evidence that the MDO lacked the capacity to make a

knowing and voluntary waiver.  (*Id*. at p. 1125.)  The Supreme Court therefore reversed the Court of Appeal's judgment affirming the commitment order, holding that a trial court must advise an MDO personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the MDO.

The same due process concerns present in *People v. Blackburn*, *supra*, 61 Cal.4th at page 1117 where there was no indication that the MDO was advised of his right to a jury trial and his counsel waived that right without his client present, are not at issue here.  Here, unlike *Blackburn*, all of the relevant discussions took place in open court.  Jauregui appeared via video and the court witnessed Jauregui deliberate whether to waive his right to a jury.  The fact that Jauregui's counsel, not the court, asked him whether he waived his right to a jury is of no import when the result is functionally the same—Jauregui was advised of his right to a jury trial and he personally waived his right to a jury trial in open court.

## DISPOSITION

The order extending Eric Jauregui's involuntary commitment is affirmed.

NOT TO BE PUBLISHED.


WINDHAM, J.[*]


We concur:



LAVIN, Acting P. J.



EGERTON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.