Filed 11/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person of C.O. <br><br> _____ <br><br> MARY ANN WARREN, as Public Guardian, etc., <br><br>      Petitioner and Respondent, <br><br>      v. <br><br> C.O., <br><br>      Objector and Appellant. | H047087 <br> (Santa Clara County <br> Super. Ct. No. 1-95-MH-032662) |

Following a court trial, the trial court found objector and appellant C.O.[1] to be gravely disabled within the meaning of the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.[2]). The court reappointed the Santa Clara County Public Guardian (public guardian) as C.O.'s conservator. On appeal from that judgment, C.O. contends the trial court prejudicially erred when it failed to advise him on the record of his right to a jury trial and did not obtain from him a personal waiver of that right. C.O. asserts the trial court erred under the LPS Act, as well as violated his constitutional

---

[1] We refer to appellant by his initials to protect his privacy interests. (Cal. Rules of Court, rule 8.90(b)(2).)

[2] Unspecified statutory references are to the Welfare and Institutions Code.

rights to due process and equal protection.  For the reasons explained below, we affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

Prior to the events at issue in this appeal, C.O. had been placed under an LPS conservatorship with the public guardian as conservator.[3]  On March 8, 2019, the public guardian petitioned for reappointment as LPS conservator for C.O., alleging he was still gravely disabled and, as the result of a mental disorder, unable to provide for his own basic needs for food, clothing, or shelter.  (§ 5008, subd. (h)(1)(A).)

The trial court issued a written citation for conservatorship (§ 5350; Prob. Code, § 1823), which was served on C.O.  The written citation ordered C.O. to appear at a hearing on April 25, 2019, and stated, inter alia:  "You have the right to a court or jury trial on the issue of grave disability.  The request for a jury trial must be made within five days of the hearing."  C.O. did not request a jury trial.

On April 25, 2019, the trial court held an initial hearing on a number of conservatorship matters, including the public guardian's reappointment petition for C.O.  C.O. was represented by appointed counsel from the public defender's office.  Before C.O. was personally present in the courtroom, C.O.'s attorney stated to the trial court:  "I have spoken to all of my clients, have informed them of their right to be present, the right to have a court — a jury trial, a court trial, or a summary hearing.  And unless otherwise stated, they've waived these rights."

C.O.'s attorney informed the trial court he would get C.O., who was "right outside."  Once C.O. was in the courtroom, his attorney stated (in C.O.'s presence):  "Your Honor, I've had a chance to speak with [C.O.] a couple of times before today's court hearing.  And at this time [C.O.] is requesting a court trial.  It looks like we have

---

[3] It is not clear from the record when C.O. was first placed under a conservatorship.  As the underlying details of the petition about C.O.'s mental illness are not material to our analysis, we do not recount them here.

2

discussed the possibility of doing that on May 23rd [2019]. And that would be our request." The trial court set the matter for a court trial.

The trial court did not advise C.O. on the record of his right to a jury trial or elicit a personal waiver of that right from him. Neither C.O. nor his attorney requested a jury trial.

The trial court conducted the court trial approximately one month later. Neither C.O. nor his attorney at any point during the trial requested a jury trial, and neither objected to the court trial. The public guardian presented two witnesses, an expert psychologist who had interviewed C.O. and C.O. himself. C.O.'s attorney cross-examined both the expert and C.O. At the conclusion of the court trial, the trial court stated that it found "beyond a reasonable doubt, that [C.O.] has both been advised in writ[]ing of his right to a jury trial [and] that he remains a gravel[]y disabled person under Welfare and Institutions Code Section 5008[, subdivision] (H)(1)(A)." The trial court granted the LPS petition for reappointment and found by "clear and convincing evidence that [C.O.] [was] unable to understand the risks and benefits of an alternative to medical treatment related to his grave disability."[4]

C.O. timely appealed the May 23, 2019 judgment.

## II. DISCUSSION

C.O. contends the trial court violated his statutory rights, as well as his constitutional rights to due process and equal protection, by failing to advise him on the record of his jury trial right and by failing to take a personal waiver of those rights. He argues that these errors require automatic reversal of the judgment. The public guardian contends no error occurred and observes the appeal is moot. The public guardian furthermore claims C.O. forfeited his constitutional challenges by failing to raise them below. We first turn to the questions of mootness and forfeiture.

---

[4] C.O. does not challenge on appeal the trial court's finding of grave disability.

3

A. *Mootness*

Pursuant to section 5361, the conservatorship order at issue automatically expired in May 2020. (See *Conservatorship of John L.* (2010) 48 Cal.4th 131, 152 (*John L.*).) C.O. acknowledges that the LPS conservatorship at issue here expired by operation of law but argues this court should not dismiss his appeal as moot.

When a challenged conservatorship has ended, the appeal of that conservatorship is "technically moot." (See *Conservatorship of K.P.* (2021) 11 Cal.5th 695, 705, fn. 3 (*K.P.*).) Nevertheless, a reviewing court has the discretion to decide an otherwise moot case if " 'it raises important issues that are capable of repetition but likely to evade review.' " (*John L.*, *supra,* 48 Cal.4th at p. 142, fn. 2; see also *Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 161, fn. 2.) We decide this standard is met here and decline to dismiss the appeal as moot.

B *Forfeiture*

The public guardian argues C.O. forfeited his jury trial claims because he failed to raise them in the trial court and fully participated in the court trial. C.O. acknowledges, and the record before us supports, that neither he nor his appointed trial counsel presented to the trial court the claims he now asserts.

As a general rule, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) The forfeiture doctrine is not absolute, however, as we are "generally not prohibited from reaching a question that has not been preserved for review by a party." (*Ibid.*)

We elect to decide the merits of C.O.'s claims. There are no disputed facts at issue and the parties agree, as do we, that our review of his claims are de novo (see part II.C.1., *post*). Under these circumstances, we exercise our discretion to address the

4

merits, notwithstanding C.O.'s failure to raise the claims in the trial court. (See *Conservatorship of Bryan S.* (2019) 42 Cal.App.5th 190, 194 (*Bryan S.*).)[5]

C. *The LPS Act*

1. Standard of Review

The statutory and constitutional claims presented here are legal issues subject to de novo review. "To determine whether the superior court violated the LPS Act . . . we must first find what the Act requires. In construing the Act, our goal is to ascertain and effectuate the Legislature's intent." (*John L.*, *supra*, 48 Cal.4th at p. 143.) "We consider individual statutes in the context of the entire Act so that each part may be harmonized and given effect." (*K.P.*, *supra*, 11 Cal.5th at p. 706.)

2. Statutory Provisions

The LPS Act, enacted in 1967, "governs the involuntary treatment of the mentally ill in California." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008.) The act "provides one-year conservatorships for those 'gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism.' (§ 5350.)" (*K.P.*, *supra*, 11 Cal.5th at p. 703.)

Section 5350 addresses the procedure for establishing an LPS conservatorship. It states in relevant part: "The procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code, except as follows: [¶] . . . [¶] (d)(1) The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship

---

[5] As we do not decide this appeal on forfeiture grounds, we need not address appellant's alternative claim of ineffective assistance of counsel. (See *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 [proposed conservatees in LPS Act proceedings are entitled to effective assistance of counsel].)

petition.  If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, the demand shall constitute a waiver of the hearing.  [¶]  (2) Court or jury trial shall commence within 10 days of the date of the demand . . . .  [¶]  (3) This right shall also apply in subsequent proceedings to reestablish conservatorship."  (§ 5350.)

Division 4 of the Probate Code–incorporated by reference into section 5350– includes Probate Code section 1828.  That statute provides in relevant part "before the establishment of a conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury."  (Prob. Code, § 1828, subd. (a)(6) (hereafter Prob. Code, § 1828(a)(6).)  Additionally, the trial court must "[a]fter the court so informs the proposed conservatee . . ., consult the proposed conservatee to determine the proposed conservatee's opinion" regarding "[t]he establishment of the conservatorship."  (Prob. Code, § 1828, subd. (b)(1).)

A hearing to reestablish a conservatorship is largely conducted according to the same rules that govern the initial establishment of a conservatorship.  " 'The conservatorship may be reestablished in summary fashion at an initial court hearing, or, upon request within five days of the initial hearing, through a full court or jury trial. (§§ 5350, subd. (d), 5365, 5362, subd. (b); [citations].)' " (*Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 962, italics omitted.)  However, unlike the procedure for determining an initial conservatorship petition, the trial court is not statutorily required to conduct a hearing to reestablish a conservatorship.  The trial court may on its own motion accept or reject the reestablishment petition without first holding a hearing if the proposed conservatee does not request either a hearing or a trial.  (*Id.* at p. 965, fn.7; § 5362, subd. (b).)

6

## 3. Case Law

A number of courts, including this one, have concluded that in LPS proceedings a conservatee's counsel may waive the conservatee's right to jury trial. In *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144 (*Maldonado*) a panel of this court held that counsel had the authority to waive a proposed conservatee's right to jury trial, and the trial court was not obligated to obtain a personal waiver from the proposed conservatee. (*Id.* at p. 148.) This court decided that "civil procedural law determines whether an individual has waived the right to a jury trial in a conservatorship proceeding" and, more specifically, applied the civil procedure code provision stating a "jury may be waived '[b]y oral consent, in open court, entered in the minutes or docket.' " (*Ibid.*) The court stated that "an attorney has authority to bind his client in any of the steps of an action or proceeding by his agreement entered upon the minutes of the court. (Code Civ. Proc., § 283.)" (*Ibid.*)

Similarly, in *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265 (*Mary K.*), the Fifth District Court of Appeal held that counsel may waive a proposed conservatee's right to jury trial and concluded "an on-the-record personal waiver of a jury trial is not required from the proposed conservatee." (*Id.* at p. 271.) In *Mary K.*, the proposed conservatee's counsel requested a court trial and "counsel stated he had spoken with his client and she wished to waive a jury trial." (*Id.* at pp. 267, 271)

The California Supreme Court in *John L.* cited with approval both *Maldonado* and *Mary K.* in concluding the trial court in that case had not violated the LPS Act or due process when it proceeded with a hearing establishing a conservatorship after the conservatee's counsel waived his client's presence. (*John. L.*, *supra*, 48 Cal.4th at pp. 147–149, 156.)

In reaching its decision in *John L.*, the California Supreme Court emphasized the civil nature of an LPS proceeding. "In providing that the procedure set forth in division 4 of the Probate Code shall apply in establishing LPS conservatorships absent a statutory

7

conflict, Welfare and Institutions Code section 5350 plainly requires the operation of Probate Code section 1827, which provides in full: 'The court shall hear and determine the matter of the establishment of the conservatorship *according to the law and procedure relating to the trial of civil actions*, including trial by jury if demanded by the proposed conservatee.' (Italics added.) While proceedings under the LPS Act are already commonly viewed as being civil in nature [citation], Probate Code section 1827 makes it all the more clear that the laws of civil procedure apply in LPS conservatorship proceedings." (*John. L.*, *supra*, 48 Cal.4th at p. 147.)

The court in *John L.* stated, "[w]hen a statutory right in a civil commitment scheme is at issue, the proposed conservatee may waive the right through counsel if no statutory prohibition exists" and decided that the attorney could therefore waive the proposed conservatee's presence at the hearing on the matter of the establishment of the conservatorship. (*John. L.*, *supra*, 48 Cal.4th at p. 148.) It reasoned that "a client who tells his appointed attorney he is unwilling to attend the hearing and does not wish to contest a proposed LPS conservatorship may reasonably expect his attorney to report such information to the court, with binding effect." (*Id.* at p. 147.)

In 2015, the California Supreme Court decided the companion cases of *People v. Tran* (2015) 61 Cal.4th 1160 (*Tran*) and *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*). These decisions addressed the procedure for jury trial advisements and jury trial waivers in civil commitment proceedings under the Mentally Disordered Offender Act [MDO] (Pen. Code, § 2960 et seq.) and for extending the involuntary commitment of a person originally committed after pleading not guilty by reason of insanity (NGI) (*id.*, § 1026 et seq.). Based upon the express language of the relevant statutes, the California Supreme Court held that in both cases a trial court must provide on the record an advisement of the right to a jury trial and must secure a personal waiver of the right to a jury trial (absent substantial evidence of incapacity) from the committed person. (*Blackburn*, at pp. 1117, 1121, 1124; *Tran*, at pp. 1163, 1165, 1166.)

8

For example, in *Blackburn* the California Supreme Court relied upon the fact that "the statutory scheme that governs MDO commitment proceedings expressly provides for advisement and waiver of the right to a jury trial." (*Blackburn*, *supra*, 61 Cal.4th at pp. 1121–1122.)  For commitment of an individual as an MDO following termination of parole, the statute requires "[t]he court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial" (*id.* at p. 1122, italics omitted) and "[t]*he trial shall be by jury unless waived by both the person and the district attorney*."  (*Ibid.*)

*Blackburn* and *Tran* did not address LPS proceedings.  Moreover, in contrast to its characterization of the LPS scheme in *John L.* as "civil in nature" (*John. L.*, *supra*, 48 Cal.4th at p. 147), in *Blackburn* and *Tran* the California Supreme Court emphasized the numerous criminal procedural protections in both the MDO and NGI statutory schemes. (See *Blackburn*, *supra*, 61 Cal.4th at p. 1120 ["The MDO commitment scheme has thus been described as 'something of a hybrid, a civil hearing with criminal procedural protections' "]; *Tran*, *supra*, 61 Cal.4th at p. 1165 ["The [NGI] statute, as enacted, set forth several procedural protections generally available only in the criminal context"].)

A handful of subsequent appellate decisions have extended the analysis in *Blackburn* and *Tran* to LPS proceedings, notwithstanding (as discussed further below) significant differences between the statutes governing LPS proceedings and those applicable to MDO and NGI determinations.  (See *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 381 (*Heather W.*); *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1244 (*Kevin A.*).)

Notably, in *Heather W.*, the Second District Court of Appeal, Division 6, held, "In conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial.  Absent such a waiver, the court must accord the conservatee a jury trial unless the court finds the conservatee lacks the capacity to make

9

such a decision." (*Heather W.*, *supra*, 245 Cal.App.4th at p. 381.) In reaching this decision, *Heather W.* did not specifically examine the applicable jury or court trial demand language of the LPS Act or compare it to the statutory language at issue in *Tran* and *Blackburn*.

### D. Analysis

To support his statutory claim that the judgment must be reversed, C.O. relies on Probate Code section 1828(a)(6) and *Heather W.*, as well as the California Supreme Court's decisions of *Tran* and *Blackburn*. He asserts these authorities required the trial court to advise him of his right to a jury trial and obtain a personal waiver of his right to a jury trial.

It is undisputed that C.O.'s attorney had consulted with him about his trial rights, and C.O. had elected a court trial. It is also undisputed that C.O. was present in court when his attorney informed the court that C.O. wished to proceed by court trial, and C.O. participated fully in the trial without objection, including as a witness. We first examine whether the trial court erred in failing to personally advise C.O. of his jury trial right and then turn to the issue of waiver.

### 1. Jury Trial Advisement

C.O. contends, and we agree, that the language of Probate Code section 1828(a)(6) requires a trial court to personally advise a proposed conservatee of his jury trial right. The LPS Act incorporates this provision of the Probate Code, which reads, "the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, § 1828(a)(6).)

This statutory language is very similar, though not identical, to the advisement provisions at issue in *Tran* and *Blackburn*. (See, e.g., *Blackburn*, *supra*, 61 Cal.4th at p. 1123.) In *Blackburn,* the provision stated, " 'The court shall advise the person of his or her right to be represented by an attorney and of the right to a jury trial.' " (*Ibid.*) The

10

California Supreme Court described this language as "unambiguous" and held that the trial court "must make this advisement to 'the person,' not to his or her attorney." (*Ibid.*)

As the California Supreme Court observed in *Blackburn*: "The Legislature saw fit to include the statutory provision requiring an advisement even though MDO defendants are often represented by counsel and even though counsel is presumed to know the defendant's rights and is obligated to advise the defendant accordingly. The meaning of the provision is clear. . . . '[i]t reflects a legislative intent to judicially ensure that "the person" knows that he or she has the right to a jury trial.' " (*Blackburn*, *supra*, 61 Cal.4th at p. 1124.) Based on the similar language in Probate Code section 1828(a)(6), we hold that this provision requires the trial court to directly advise the proposed LPS conservatee on the record in a court proceeding of his or her right to have the matter of the establishment or reestablishment of the conservatorship decided by trial by jury.

The public guardian points out that, although the trial court did not directly advise C.O. of his right to jury trial, C.O. was nevertheless "advised of his right to a jury trial by service of a citation and by his court-appointed counsel, and he waived that right through counsel." We are not convinced these actions fulfill the statutory requirement that "*the court* shall inform *the proposed conservatee*" of the right to have the matter of the establishment or reestablishment of the conservatorship tried by jury. (Prob. Code, § 1828(a)(6), italics added.) Taking guidance from the California Supreme Court in *Blackburn,* we conclude this language reflects a legislative intent to "judicially ensure" the proposed conservatee has knowledge of his or her right to a jury trial. (See *Blackburn*, *supra*, 61 Cal.4th at p. 1124.)

Probate Code section 1823 requires that the clerk serve a citation that includes, among other information, that "the proposed conservatee has the right to a jury trial if desired." (Prob. Code, § 1823, subd. (b)(7).) However, there is no indication in Probate Code section 1828 that the clerk's provision of the written citation satisfies the separate procedural safeguard afforded by section 1828(a)(6), that the court "shall inform the

11

proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, §1828(a)(6).)

Based on the language of section 5350 and Probate Code section 1828(a)(6), we therefore decide that where, as here, the proposed conservatee is able to and willing to attend the hearing (cf. Prob. Code, § 1825), the trial court must directly advise a proposed conservatee of his or her right to a jury trial over the matter of the establishment or reestablishment of the conservatorship. The trial court's failure to do so here was statutory error.

Before considering whether that advisement error requires reversal of the judgment, we address whether the trial court erred in accepting counsel's waiver of C.O.'s right to jury trial.

### 2. Waiver of the Right to Jury Trial

C.O. also contends the trial court was statutorily required to obtain from him a personal waiver of his right to jury trial, and the trial court erred by relying upon the waiver by his counsel. But C.O. does not point to language in any of the relevant statutes addressing waiver of the jury trial right, and our independent research has not identified any.[6]

Section 5350, which sets forth the procedures specific to establishment of an LPS conservatorship, *does* reference waiver but not with respect to the right to jury trial. It states, "The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition. If the proposed conservatee demands a court or jury trial before the date of the

---

[6] At oral argument in this matter, counsel for C.O. agreed that the LPS statutes do not reference waiver of jury trial. C.O.'s appellate counsel conceded that the trial court would have had the authority to accept the jury waiver from counsel had the trial court personally advised C.O. of his right to jury trial. C.O. maintains that the trial court's failure to do so here was structural error requiring reversal.

12

hearing as provided for in Section 5365, *the demand shall constitute a waiver of the hearing*." (§ 5350, subd. (d)(1), italics added.) The reference to waiver of the right to a hearing on the conservatorship petition, and the omission of any similar language with respect to the right to jury trial, highlights that the Legislature knew how to set out specific conditions of waiver in the LPS scheme but chose not to do so for the right to jury trial.

As described above in our discussion of the jury trial advisement, Probate Code section 1828, which specifies what information the court must provide for proposed conservatees, is incorporated by reference into section 5350. Probate Code section 1828 similarly does not reference waiver. Indeed, "[t]he Probate Code does not require a jury trial or an express waiver of a jury." (*Conservatorship of B.C.* (2016) 6 Cal.App.5th 1028, 1035 (*B.C.*).)

We recognize that Probate Code section 1828, subdivision (b)(1), provides that "[a]fter the court so informs the proposed conservatee and before the establishment of the conservatorship, the court shall consult the proposed conservatee to determine the proposed conservatee's opinion concerning . . . . [¶] (1) The establishment of the conservatorship." However, a requirement that the court "consult" with the proposed conservatee for his or her "opinion" about the conservatorship does not equate to the distinctly different concept of waiver. (Prob. Code, §1828, subd. (b).) The Second District Court of Appeal, Division 6, has rejected the claim that the reference to "consult" in Probate Code section 1828 requires any act other than the communication of the proposed conservatee's sentiments to the court by the attorney. (*B.C.*, *supra*, 6 Cal.App.5th at p. 1036.)

C.O. does not assert any deficiency in the failure to communicate C.O.'s sentiments to the court, and we see no evidence of any in the record. C.O. informed the court, through his counsel, that he wished to have the matter of his conservatorship

13

decided by court trial. In response, the court conducted a court trial, in accordance with C.O.'s expressed preference.

Based upon the absence of any specific language referencing waiver in either section 5350 or the applicable Probate Code provisions, we adhere to our prior conclusion in *Maldonado*, *supra*, 173 Cal.App.3d at p. 148. We hold that (absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury) counsel may waive on behalf of the proposed conservatee his or her right to have the matter of establishment or reestablishment of the conservatorship decided by jury trial.

Our reading of the LPS statutes is bolstered by the analysis of the California Supreme Court in *Tran* and *Blackburn.* The statutory schemes examined in those cases included express waiver provisions, which the court repeatedly emphasized in both decisions. In *Blackburn*, for instance, the statute provided " 'The trial shall be by jury *unless waived by both the person* and the district attorney.' ([Pen. Code,] § 2972[,] [subd.](a).)" (*Blackburn*, *supra*, 61 Cal.4th p. 1124, italics added.) Contrasting the statutory scheme for MDO proceedings with those for competency hearings (which the California Supreme Court had previously held do not require a personal waiver of the right to jury trial), the court observed "the statutory scheme that governs MDO commitment proceedings expressly provides for advisement *and waiver of the right to a jury trial*." (*Id*. at pp. 1121–1122, italics added.)

Similarly, in *Tran*, the California Supreme Court observed: "In this case, we address the meaning of nearly identical language in the statutory scheme for extending the involuntary commitment of a person originally committed after pleading not guilty by reason of insanity (NGI) to a criminal offense. The NGI statute provides that in a commitment extension proceeding, 'the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial' (Pen.

14

Code[,] § 1026.5, subd. (b)(3)), and '*[t]he trial shall be by jury unless waived by both the person* and the prosecuting attorney' (*id.*, § 1026.5, subd. (b)(4))." (*Tran*, *supra*, 61 Cal.4th at p. 1163, italics added.) The court held "this language has the same meaning as the parallel language in the MDO statute." (*Ibid.*)

The California Supreme Court highlighted the importance of the use of the same language in the two statutory schemes. "In light of our interpretation of the MDO advisement and waiver provisions in *Blackburn*, we could hardly reach a different interpretation of the NGI advisement and waiver provisions. ' "It is an established rule of statutory construction that similar statutes should be construed in light of one another [citations] and that when statutes are in pari materia similar phrases appearing in each should be given like meanings." ' " (*Tran*, *supra*, 61 Cal.4th at pp. 1167–1168.) Thus, it was significant to the court that the MDO and NGI regimes used the same language of waiver. But it is equally important in our view that the LPS statutory scheme does not reference jury trial waiver at all.

The LPS statute and the statutory schemes examined in *Tran* and *Blackburn* exhibit other significant differences. In both the MDO and NGI contexts, the statutes provide that the default procedure is by jury trial. In *Blackburn*, for example, the California Supreme Court described the MDO commitment scheme as "best understood as 'a civil hearing with criminal procedural protections' [citation], and we find it significant . . . that the Legislature set forth protections in section 2972 that are borrowed directly from the criminal context. In an MDO commitment proceeding, as in a criminal trial, the 'jury guarantee' is a basic protection." (*Blackburn*, *supra*, 61 Cal.4th at pp. 1134–1135.) Similarly, the California Supreme Court said of the NGI procedures, they require the trial court "to obtain a waiver from 'the person' "and "[t]he statute [Penal Code section 1026.5, subdivision (b)(4)] does not require the defendant to affirmatively show he or she wanted a jury trial; a jury trial is the default procedure absent a personal waiver." (*Tran*, *supra*, 61 Cal.4th at p. 1169.)

15

By contrast, the language of the LPS Act does not reflect a preference for jury trials over court trials. Rather than making a jury trial the default procedure, section 5350 states a proposed conservatee has the right to demand "a court *or* jury trial on the issue of whether he or she is gravely disabled." (§ 5350, subd. (d)(1), italics added.) Section 5362, subdivision (b), which addresses petitions to reestablish a conservatorship, requires a "court hearing or jury trial" to be the subject of a "request." (§ 5362, subd. (b).) If no request is made for a court hearing or jury trial, the judge "may, on his or her own motion, accept or reject the conservator's petition." (*Ibid.*) This provision further highlights that jury trial is not the default mechanism for reestablishment of a conservatorship. In short, we see no basis in the language of the LPS Act for a requirement that the trial court obtain a personal waiver of jury trial from the proposed conservatee when, as here, that conservatee's attorney has spoken with the conservatee, has so informed the court, and waived jury on his behalf.

In our view, the facts here are similar to those in *Mary K.* in which the Fifth District Court of Appeal held that counsel may waive a proposed conservatee's right to jury trial where "counsel stated he had spoken with his client and she wished to waive a jury trial." (*Mary K.*, *supra*, 234 Cal.App.3d at p. 271[7]; cf. *Kevin A.*, *supra*, 240 Cal.App.4th at p. 1244 [holding that the trial court erred in accepting a waiver of jury trial over proposed conservatee's objection].) As in *Mary K.*, C.O. does not contend his appointed attorney acted against his wishes when he waived the right to jury trial. (*Mary K.*, at p. 271.) *Heather W.* is distinguishable because there was no indication in the trial court proceedings in that case of the proposed conservatee's wishes or any evidence that the conservatee's attorney had consulted with the conservatee. (*Heather W.*, *supra*, 245 Cal.App.4th at pp. 381, 384.)

---

[7] The Court of Appeal in *Mary K.* also examined whether counsel may waive a conservatee's right to advisement of the right to jury trial—an issue not raised in this appeal. (See *Mary K.*, *supra*, 234 Cal.App.3d at pp. 271–272.)

16

In deciding that the trial court did not err in taking the jury trial waiver from counsel rather than C.O., we emphasize that there is no evidence in the record that C.O. desired a jury trial, that C.O. was actually unaware of his right to jury trial, or that his attorney elected to proceed with a court trial over C.O.'s objection.  We need not reach the question of whether C.O.'s counsel would have had that authority.  (See *Kevin A.*, *supra*, 240 Cal.App.4th at p. 1251 [holding that the trial court erred by accepted counsel's waiver of the right to jury trial where the conservatee himself on the record requested a " 'full jury trial' "]; see also *Blackburn*, *supra*, 61 Cal.4th at p. 1125 ["If the Legislature had intended to allow counsel to waive a jury trial notwithstanding the defendant's wishes, it would not have needed to require the trial court to expressly advise the defendant."].)  On the record here, we decide the trial court did not violate C.O.'s statutory rights when it accepted counsel's waiver of C.O.'s right to jury trial before conducting a court trial on the matter of the reestablishment of his LPS conservatorship.

E.  *Constitutional Claims*

C.O. also asserts that the trial court was required under principles of due process and equal protection to elicit a personal waiver on the record of his right to jury trial.

1.  Due Process

C.O. contends the trial court's failure to obtain a personal waiver violated his due process rights.  He relies on, inter alia, *Conservatorship of Roulet* (1979) 23 Cal.3d 219, in which the California Supreme Court held under the due process clause of the California Constitution that the state must prove a person is gravely disabled beyond a reasonable doubt and, when the proposed conservatee demands a jury trial, the jury's finding must be unanimous.  (*Id.* at p. 235.)

There is no doubt that the liberty interest at stake in conservatorship proceedings "implicates due process concerns."  (*K.P.*, *supra*, 11 Cal.5th at p. 717.)  Nevertheless, consistent with prior precedent from this court, we do not agree that a trial court's failure to obtain a personal waiver on the record of the proposed conservatee's right to a jury

17

trial violates a constitutional due process right. (*Maldonado, supra*, 173 Cal.App.3d at pp. 147–148.)

This conclusion is bolstered by the due process analysis of the California Supreme Court in *John L.* (*John L.*, *supra*, 48 Cal.4th at pp. 149–156.) In that case, the court observed that an LPS commitment does not require all the procedural safeguards afforded in criminal proceedings: "As much as the private interests at stake are weighty and deserving of protection, the stated purposes of the LPS Act foreclose any argument that an LPS commitment is equivalent to criminal punishment in its design or purpose. Because of their differing objectives, 'the analogy between criminal proceedings and proceedings under the LPS Act is imperfect at best and . . . not all of the safeguards required in the former are appropriate to the latter.' " (*Id*. at p. 151.)

Our high court further recognized that "because the private interests implicated in an LPS conservatorship are significant, 'several layers of important protections' have been built into" the LPS conservatorship system to guard against erroneous conclusions. *John L.*, *supra*, 48 Cal.4th at p. 151.) Those protections include the right to demand a court or jury trial under section 5350, the right to court-appointed counsel for the proposed conservatee, and "prompt remedial relief" after a conservatorship has been established, such as the automatic termination after one year of the conservatorship (§ 5361) and the conservatee's right during the one-year period of the LPS conservatorship to twice petition for rehearing as to his status as a conservatee (§ 5364). (*John L.*, at pp. 151–152.)

The California Supreme Court concluded that no deprivation of due process occurred in *John L.*, stating: "When we consider the combination of due process protections that have been built or read into the LPS Act, including the prehearing notice and counsel requirements and the requirement for a comprehensive conservatorship investigation report, as well as the familiar duties imposed on counsel in the representation of LPS clients and the availability of remedies after a conservatorship is in

18

place, we have no difficulty concluding that these numerous checks sufficiently guard against the risk of erroneous conservatorship decisions, without the need to impose additional waiver-related requirements. Accordingly, a superior court may properly find a waiver of presence and trial rights when informed by the attorney that the proposed conservatee does not want to attend the hearing to establish the LPS conservatorship and does not oppose the conservatorship. Whether the proposed conservatee has knowingly and intelligently waived his presence and trial rights is a question of fact; it may not be presumed that a person found gravely disabled, or one who has been evaluated or treated for a mental disorder, is incompetent to waive such rights." (*John L.*, *supra*, 48 Cal.4th at p. 154.)

On this record, we similarly decide substantial evidence supports the trial court's implicit conclusion that C.O. knowingly and intelligently waived his right to a jury trial. C.O. was present at both the April 25, 2019 hearing and the court trial in May 2019, and there is no indication in the record that he disagreed with the decision to have his conservatorship decided by court trial or that he demanded a jury trial instead of a court trial. There is also no evidence or suggestion in the record that C.O. did not comprehend what his appointed counsel was representing to the trial court on his behalf at the April 25, 2019 trial setting hearing. To the contrary, the record reflects that counsel had spoken with C.O. several times and he consented to a court trial, and there is no evidence C.O. lacked an understanding of those communications. Indeed, C.O. was present with his counsel and had greeted the court when his counsel informed the trial court C.O. wanted a "court trial." As noted above, even if mentally ill, we may not simply presume C.O. was incompetent. (*John L.*, *supra*, 48 Cal.4th at p. 154.) Based on the totality of the circumstances here, we perceive no basis upon which to conclude that the trial court's failure to elicit his personal waiver here on the record resulted in an unfair hearing.

C.O. seeks to distinguish *John L.* on the ground that C.O. was present at the April 25, 2019 hearing, and *John L.* was decided before *Tran* and *Blackburn*. While it is true

19

the California Supreme Court did not, in *John L.*, address specifically the situation when a proposed LPS conservatee is present (in that case, the conservatee was absent), we view this as a distinction without a difference. As a matter of logic, we see no reason to conclude that an attorney could waive a proposed conservatee's presence altogether but could not waive the conservatee's right to request a jury trial in lieu of a court trial.

We recognize that a number of courts have concluded that a trial court in an LPS proceeding must obtain a waiver from the conservatee about the right to a jury trial. We respectfully disagree with *Heather W.* to the extent it applied *Roulet* to hold that principles of constitutional due process under the California constitution require "a trial court [to] obtain a waiver of the right to a jury trial from the person who is subject to an LPS commitment." (*Heather W.*, *supra*, 245 Cal.App.4th at p. 383.) For the reasons stated above in our discussion of the statutory differences between LPS proceedings and NGI and MDO determination, we do not agree that *Blackburn* and *Tran* dictate the constitutional analysis here.

Finally, while C.O. vaguely references his federal rights to due process, he does not provide any case law supporting that right in this context. Based on the lack of relevant authority, C.O. has not demonstrated that the procedure here violated his federal constitutional right to due process.

2. Equal Protection

C.O. also asserts the trial court violated his equal protection rights under the California Constitution and United States Constitution. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) He contends he is "similarly situated" to a defendant who is subject to a NGI or MDO proceeding and therefore the trial court was constitutionally obligated to secure a personal waiver of jury trial from him because "[t]he common denominator is that the individuals all suffer from a treatable mental illness and all three statutory schemes operate under the belief that treatment is one of the underlying goals." We conclude his claims lack merit.

20

" ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.]  The initial inquiry in any equal protection analysis is whether persons are '*similarly situated* for purposes of the law challenged.' " (*In re Lemanuel C.* (2007) 41 Cal.4th 33, 47.)  "Where two or more groups are properly distinguishable for purposes of the challenged law, it is immaterial if they are indistinguishable in other respects.  [Citation.]  Nor, absent this threshold requirement, is an equal protection inquiry into the justification for any legislative distinction necessary." (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.)  "If there is such a disparity, then we must proceed to decide which level of scrutiny to apply." (*People v. Yanez* (2019) 42 Cal.App.5th 91, 95.)

In *Bryan S.*, which examined whether proposed LPS conservatees have the right to refuse to testify in a conservatorship trial, the First District Court of Appeal, Division 1, rejected a similar equal protection challenge to the LPS statute.  (*Bryan S.*, *supra*, 42 Cal.App.5th at pp. 196–198.)  In that case, the proposed LPS conservatee asserted that he, (as do individuals in NGI proceedings, MDO proceedings, and sexually violent predator (SVP) proceedings) had a right to refuse to testify at his trial.  (*Id.* at pp. 194, 196.)

The court in *Bryan S.* concluded an LPS conservatee faces materially different circumstances from an NGI, an SVP, or an MDO, and the differences were fatal to the equal protection claim.  Specifically, the court observed:  "LPS Act conservatees, unlike those facing NGI, SVP, or MDO commitment proceedings, need not have been found to have committed a crime or be a danger to others.  [Citation.]  As a result, there are far more placement options for conservatees, and these options include noninstitutional settings.  Courts must determine the least restrictive and most appropriate placement for conservatees, which includes placing them with family or friends.  (§ 5358, subds. (a)(1)(A), (c)(1).)" (*Bryan S.*, *supra*, 42 Cal.App.5th at pp. 196–197.)  We agree with *Bryan S.* on this point.  We decide, for reasons that largely track the analysis

21

distinguishing *Blackburn* and *Tran* set out above, that LPS conservatees are not similarly situated to individuals in NGI and MDO proceedings with respect to the waiver of the right to jury trial.[8]  The trial court was not obligated by either the California or federal Constitutions under the circumstances here to elicit a personal, on-the-record waiver of C.O.'s right to jury trial for reestablishment of the conservatorship.

F. *Prejudice*

Having concluded that the trial court erred under the LPS Act by failing to expressly advise C.O. of his right to a jury trial, we consider the question of prejudice. The parties disagree on the relevant standard.  The public guardian argues for application of the prejudicial error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. Under that rubric, we must determine whether it is reasonably probable that a result more favorable to C.O. would have been reached in the absence of the error.  C.O. asserts the failure to advise and elicit a waiver was structural error requiring automatic reversal.

We have decided that the trial court violated C.O.'s statutory right under the LPS Act by omitting to advise him personally of his jury trial right on the record. Nevertheless, we have rejected C.O.'s other contentions, including his constitutional claims, with respect to waiver of that right.

As the California Supreme Court has explained, "article VI, section 13 generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.'  [Citation.]  The section applies to both constitutional and nonconstitutional errors.  [Citation.]  It 'empower[s]' appellate courts 'to examine "the entire cause, including the evidence," ' and 'require[s]' them 'to affirm the judgment,

---

[8] For this reason, we also reject the applicability of *Conservatorship of E.B.* (2020) 45 Cal.App.5th 986, 995–996, review granted June 24, 2020, S261812 [recognizing that "NGI's, SVP's and MDO's do not share identical characteristics with LPS conservatees" but holding, for purposes of the testimonial privilege that they are similarly situated such as the denial of the right to LPS conservatees to refuse to testify violates the equal protection clause].

notwithstanding error, if error has not resulted "in a miscarriage of justice." ' [Citation.] To be sure, even under article VI, section 13, an error is reversible per se when it constitutes 'a " 'structural [defect] in the . . . trial mechanism' " that defies evaluation for harmlessness.' [Citations.] But '[c]ategorization of an error as structural represents "the exception and not the rule." ' [Citation.] '[A] strong presumption' exists *against* finding that an error falls within the structural category, and 'it will be the rare case' where an error—even 'a constitutional violation'— 'will not be subject to harmless error analysis.' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) "In the absence of structural error, the *Watson* standard for demonstrating prejudice controls." (*People v. Anzalone* (2013) 56 Cal.4th 545, 555.) " 'Plainly, not every violation of the state and federal right to a jury trial is a structural defect requiring reversal without regard to whether the defendant suffered actual prejudice.' " (*Id.* at p. 560.)

In support of his claim that a structural error analysis applies here, C.O. points principally to *Blackburn* and *Tran*. The California Supreme Court stated in *Blackburn* it would "treat a trial court's failure to obtain a required personal jury trial waiver as tantamount to the denial of a jury trial, and as such, it constitutes a 'miscarriage of justice' under article VI, section 13." (*Blackburn*, *supra*, 61 Cal.4th at p. 1134; see also *Tran*, *supra*, 61 Cal.4th at p. 1169.)

However, *Blackburn* supports the application of harmless error rather than structural error for the trial court's failure to directly advise C.O. of his right to a jury trial. The California Supreme Court stated that "a trial court's failure to properly advise an MDO defendant of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Blackburn*, *supra*, 61 Cal.4th p. 1136.)

23

In this case, we have determined a personal on-the-record waiver was not required by statute, and there is substantial evidence supporting the trial court's implied finding that C.O.'s waiver was knowing and voluntary given the citation mailed to him that explained his right to jury trial, the evidence that his counsel informed him of his right to jury trial, his presence at the hearing when his counsel stated he wished a "court trial," and the evidence of his communications with his counsel about how he wished to proceed. Given the totality of circumstances here, we are left solely with the error that the trial court did not personally advise C.O. of his jury trial right, which we conclude by itself does not warrant automatic reversal. (Cf. *People v. Sivongxxay* (2017) 3 Cal.5th 151, 183 [addressing statutory error under state law and rejecting criminal defendant's argument that advisement error required automatic reversal, because "in appropriate circumstances courts can indeed ascertain whether or not a particular defendant would have chosen a jury trial instead of a bench trial had an error in advisement not occurred"].)

*Heather W.*, which did address an LPS proceeding, is factually distinguishable from C.O.'s circumstances. Unlike *Heather W.*, where the record was effectively silent about whether the proposed conservatee had been informed of the right to jury trial, the record here affirmatively demonstrates C.O. was informed of his right to a jury trial, both in writing and by his counsel. He did not express any disagreement or indicate that his counsel's express statement that he wanted a court trial was contrary to his wishes. We therefore conclude the *Watson* standard applies.

Under this standard, "the appellant bears the burden to make an 'affirmative showing' the trial court committed error that resulted in a miscarriage of justice." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533.) C.O. has not carried this burden. C.O. does not dispute the underlying evidence supporting the trial court's conclusion that he is gravely disabled (see fn. 4, *ante*). Having independently reviewed the record, we determine the evidence—including the testimony provided by

24

C.O. and the expert psychologist—supports the conclusion that C.O. remained gravely disabled at the time of the May 2019 court trial.  We therefore conclude it is not reasonably probable that an outcome more favorable to C.O. would have resulted had the trial court personally advised him of his jury trial right.  We also see nothing in the record suggesting that C.O. would have elected a jury trial over a court trial if the trial court had advised him personally at the court proceeding of his right to the former.  The omission of the jury trial advisement was harmless on this record.

## III.  DISPOSITION

The May 23, 2019 judgment is affirmed.

_____
                                      Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047087**
*Warren, as Public Guardian v. C.O.*

Trial Court:   Santa Clara County Superior Court, No. 1-95-MH-032662

Trial Judge:   Hon. Cynthia C. Lie

Counsel:       Joseph Vincent Doyle, by appointment of the Court of Appeal under
               the Sixth District Appellate Program, for Objector and Appellant.

               James R. Williams, County Counsel, Howard G. Frank, Deputy
               County Counsel, for Petitioner and Respondent.

**H047087**
*Warren, as Public Guardian v. C.O.*