Filed 11/22/21  P. v. Zuniga CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074958 |
| v. | (Super.Ct.No. INF065236) |
| ROGELIO LEON ZUNIGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorney Generals, Lance E. Winters, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Christopher P. Beesley, and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

**FACTUAL AND PROCEDURAL HISTORY**

A.     PROCEDURAL HISTORY

A jury convicted defendant and appellant Rogelio Leon Zuniga of first degree murder with robbery special circumstances under Penal Code[1] sections 187, subdivision (a) and 190.2, subdivision (a)(17).  On February 1, 2013, the trial court sentenced defendant to one year plus life in prison without the possibility of parole.

After defendant appealed, we affirmed the judgment in *People v. Dunson et. al.* (Feb. 26, 2015, No. E056565 [nonpub. opn.]).

On July 26, 2019, defendant filed a petition for resentencing under section 1170.95.  Defendant argued that he could not be convicted of murder today pursuant to the statutory changes pursuant to SB 1437.  The People filed an opposition and argued that section 1170.95 was unconstitutional and defendant's robbery-murder special circumstance made him ineligible for relief.  The trial court stayed the matter pending the outcome of two cases determining the constitutionality of SB 1437.  Defendant filed a reply in support of his petition to preserve his arguments on the constitutionality of SB 1437.

On November 22, 2019, the trial court lifted the stay.

On February 14, 2020, by oral motion, the People moved to have the petition dismissed because defendant's jury found true a robbery-murder special circumstance, the court sentenced defendant to life without the possibility of parole, and the court

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

instructed the jury with CALCRIM No. 703, which required the jury to find that defendant acted with intent to kill or was a major participant with reckless indifference. The court granted the People's motion to dismiss the petition.

On March 18, 2020, defendant filed a timely notice of appeal.

B.     FACTUAL HISTORY[2]

In November 2007, Jackie Dunson and her brother Robert Dunson lived in the ground floor apartment of a two-story duplex in Indio.  Ronald Handwerk occasionally stayed with them.  Defendant and his girlfriend, M.J., lived in the apartment above the Dunsons' apartment.  Fernando Benavidez was Jackie's boyfriend and visited at the apartment occasionally.  Jackie sometimes would engage in prostitution and Benavidez would bring her clients, or "dates."  In November 2007 Robert, Jackie, M.J., Handwerk, Benavidez, and defendant hung out together and smoked methamphetamine in the Dunsons' apartment on most days.

On November 25, 2007, M.J., Benavidez, Robert, defendant, Handwerk, and Jackie were at the Dunsons' apartment.  Benavidez offered to find someone to bring back to the apartment to have sex with Jackie.  Robert did not want his sister to engage in sex for money, so he proposed that they bring a man "back to the apartment, beat his ass, rob him, and take all of his shit."  Jackie nodded her head in agreement.  Defendant and

_____

[2] The facts are taken from our unpublished opinion in case No. E056565.  An unpublished case may be cited for the purpose of providing a factual background. (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

Handwerk said nothing. Benavidez left the apartment to find someone and M.J. and defendant went back to their upstairs apartment.

A surveillance videotape from the Spotlight 29 casino, which was approximately five minutes from the Dunsons' apartment, showed Benavidez entering the casino just after midnight during the morning of November 26, 2007. He eventually was able to persuade the victim, William Dobbs, to come with him to the Dunsons' apartment. They drove together in Dobbs's car.

At some point that night or early morning, M.J. woke to the voice of a man in the Dunsons' apartment screaming: "Oh, God. Please help me." M.J. described the screaming as "gut wrenching," "like someone is in pain, like they were hurt [and] screaming for someone to help them." She also heard "very loud" sounds of banging on a wall downstairs, "like something pretty heavy slamming up against the wall." Defendant told M.J. to go back to sleep. Handwerk went upstairs, woke defendant and told him to go downstairs because he had broken someone's ribs and Handwerk's hand was "messed up." M.J. went back to sleep.

In the predawn hours of November 26, 2007, T.S., who was friends with Robert and Jackie, walked to the Dunsons' apartment. As she approached, she saw Benavidez walking away from the apartment. When she got closer to the apartment, she heard Jackie arguing, yelling, and crying. T.S. heard Jackie say, "he was acting stupid," and "[h]e doesn't want to give [the money] to her." A side door to the apartment was ajar. As T.S. passed by that door, she heard Robert yelling loudly and angrily, " '[g]et down, mother fucker' " and "[t]hese better be the right PIN numbers." T.S. watched Robert

4

push a man to his knees. The man appeared to have blood under his chin. Robert then put a plastic bag over the man's head and used duct tape to secure the bag to the man's neck and face. T.S. decided to leave. As she left, she heard Robert say: "Come on, mother fucker. We're going for a ride."

Robert recruited defendant to help him. Jackie watched as defendant and Robert drove off with Dobbs in Dobbs's car. M.J. asked for defendant, and Jackie told her that he and Robert had to go somewhere but that they would back.

M.J. went downstairs to the Dunsons' apartment the morning of November 27. Robert was kneeling in a corner of the living room scrubbing the walls with bleach and pulling up the carpet. He gave M.J. a bank card and a piece of paper with a PIN number written on it and told her to pull out as much money as she could and bring it back to him. Between 10:26 a.m. and 11:39 a.m. on November 27, M.J. and defendant used Dobbs's bank card to retrieve approximately $1,000 from different ATMs. When she and defendant returned to the Dunsons' apartment, she gave him $300, the bank card, and the piece of paper with the PIN number. M.J. kept the remaining cash.

Dobbs's body was found on November 27 two miles from the Spotlight 29 casino; he had a black bag attached to his neck with red tape. He had been stabbed with a sharp instrument 14 times, mostly on his face and neck. His internal and external jugular veins and carotid artery were severed, and his trachea was also severed. He had bruises and abrasions on his face and scalp, and signs of blunt force trauma to his chest. He had four broken ribs, which caused ruptures to his liver and lung. The forensic pathologist who performed the autopsy on Dobbs described the injuries as "brutal," and said it "looked

5

like perhaps some injuries were inflicted for the purpose of torture" and for "causing pain."

Dobb's car was found on December 1, 2007, approximately 100 yards from the Dunson's apartment.  (*People v. Dunson*, 2015 Cal.App. Unpub. LEXIS 1445, *3-12)

## DISCUSSION

A.  <u>THE TRIAL COURT PROPERLY FOUND DEFENDANT INELIGIBLE FOR RELIEF UNDER SECTION 1170.95</u>

Defendant contends that the trial court erred in finding him ineligible for relief under section 1170.95 without issuing an order to show cause and conducting an evidentiary hearing.  For the reasons set forth *post*, we find that the trial court properly found defendant ineligible for relief under section 1170.95.[3]

### 1.  *LEGAL BACKGROUND*

Effective January 1, 2019, Senate Bill 1437 (SB 1437) was enacted to "amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  It accomplished this by amending section 188, which defines malice, to add a requirement that all principals to a murder must act with express or implied malice to be

---

[3] In *People v. Lewis* (2021) 11 Cal.5th 952, 972-973, the California Supreme court addressed the appropriate stage in section 1170.95 proceedings for appointment of counsel. This is not an issue in this case because the trial court appointed counsel for defendant.

convicted of that crime. (*Id.*, § 2, subd. (a).) It also amended section 189, which defines the degrees of murder, by adding a condition to the felony-murder rule. Henceforth, in order to be convicted of felony murder, a defendant who was neither the actual killer nor a direct aider and abettor to the murder must have been a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3, subd. (d)(3); see *Lewis*, *supra*, 11 Cal.5th at pp. 959-960; *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, [Sen. No. 1437] added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Thus, section 1170.95 allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) The section goes on to describe what must be included in a petition for resentencing, and sets forth the procedure to be followed by a trial court upon receiving such a petition.

In its initial review of whether a petitioner has made a threshold showing that he or she falls within the provisions of section 1170.95, the court examines whether the petitioner has stated eligibility for relief. A petitioner must allege: (1) an accusatory pleading was filed against him or her allowing prosecution under the felony-murder rule or the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1)); (2) he or she

was convicted of first or second degree murder following a trial, or pleaded guilty to first or second degree murder in lieu of a trial at which he could have been so convicted (*id.*, subd. (a)(2)); and (3) he or she could not today be convicted of first or second degree murder because of the 2019 amendments to sections 188 and 189 (*id.*, subd. (a)(3)).

If the petitioner meets this facial showing of eligibility, the court must appoint counsel and entertain briefing from the prosecutor and appointed counsel. If, after briefing, the petitioner has established a prima facie case he or she is entitled to relief, i.e., if a *showing* regarding his or her eligibility has been made, the court must issue an order to show cause, and thereafter hold a full hearing to determine whether petitioner is entitled to relief. (§ 1170.95, subds. (c) & (d)(1); see also *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Lewis*, at p. 960.)

We apply a de novo standard of review to a lower court's denial of a defendant's section 1170.95 petition. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, fn. 8

(*Verdugo*), review granted March 18, 2020, S260493; cf. *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 [statutory construction questions are reviewed de novo].)

  2. *ANALYSIS AND APPLICATION*

 In this case, a jury convicted defendant of first degree murder as an aider and abettor, and a robbery special circumstance was found true. After defendant appealed and we affirmed the judgment, defendant filed a section 1170.95 petition. At the hearing on the petition, the People moved to dismiss the petition because the jury found true that the robbery-murder special circumstance required the jury to find defendant intended to kill or was a major participant who acted with reckless indifference to human life. The trial court agreed with the People and dismissed defendant's section 1170.95 petition.

 On appeal, defendant contends that "the trial court erred in dismissing the petition because the findings on the robbery-murder special circumstance allegation were made prior to the *Banks* and *Clark* decisions,[4] therefore the matter should be reversed and remanded with instructions to issue an order to show cause under section 1170.95." (All caps. omitted.)

 Recently, in *People v. Jones* (2020) 56 Cal.App.5th 474 (*Jones*), review granted January 27, 2021, S265854, this court rejected a similar contention. (*Id.* at pp. 482-485.) In *Jones*, we held that "[a] petitioner with a pre-*Banks/Clark* finding faces the same bar to relief under section 1170.95 as a petitioner with a post-*Banks/Clark* finding. This is because *Banks* and *Clark* did not create a new rule of law, but rather 'clarified' the

---

 **4** *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

9

already-existing meaning of the phrases 'major participant' and 'reckless indifference to human life' for purposes of special circumstance allegations under section 190.2, subdivision (d)." (*Id.* at p. 482.) Therefore, "a special circumstance finding under section 190.2, subdivision (d) [renders a petitioner ineligible] for relief under section 1170.95 as a matter of law. This is because a jury has already found them to have satisfied the new definition of felony murder under amended section 189. Although they were not the actual killer, a jury found them to have been a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.* at p. 482.)

We recognize that there is a split of authority on (1) whether a defendant must first seek relief under *Banks/Clark* through a habeas petition before filing a section 1170.95 petition (*Jones*, *supra*, 56 Cal.App.5th at pp. 482-483). We also recognize that the issue of whether a felony-murder special circumstance finding under section 190.2, subdivision (a)(17), made before *Banks* and *Clark*, precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95, is currently pending before the Supreme Court. (*People v. Strong* (Dec. 18, 2020, C091162) [2020 Cal.App.Unpub.LEXIS 8505], review granted March 10, 2021, S266606.)

Courts, including this court, which have held that a pre-*Banks* and *Clark* felony-murder special circumstance finding bars section 1170.95 resentencing relief, have reasoned that *Banks* and *Clark* merely clarified the law as it always was. (*Jones*, *supra*, 56 Cal.App.5th at pp. 482-484; accord, *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted January 13, 2021, S265918; *People v. Allison* (2020) 55 Cal.App.5th 449.) These courts further note that our Supreme Court does not require juries to be

10

instructed on the *Banks* and *Clark* clarifications. "Rather, while CALCRIM No. 703 now includes *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, '[t]he bench notes to the instruction state that *Banks* "stopped short of holding that the court has a sua sponte duty to instruct on those factors," and *Clark* "did not hold that the court has a sua sponte duty to instruct on those factors." ' " (*Nunez*, at pp. 92-93; accord, *Jones*, at p. 484; *Allison,* at pp. 458-459.) Thus, these courts found "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94.)

These courts have also held that an attack on a special circumstance finding in a section 1170.95 proceeding effectively constitutes a collateral attack on the judgment. (*People v. Galvan* (2020) 52 Cal.App.5th 1135, 1142, review granted October 14, 2020, S264284; *People v. Gomez* (2020) 52 Cal.App.5th 1, 16.) According to these courts, a petitioner who wishes to argue the special circumstance finding is invalid under current law must first seek to invalidate that finding through a petition for writ of habeas corpus before seeking resentencing pursuant to section 1170.95. (*Galvan*, at p. 1142; *Gomez*, at p. 17; *Jones*, *supra*, 56 Cal.App.5th at p. 485.) These courts reason that a contrary interpretation "would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the

burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, *supra*, 56 Cal.5th at p. 485.)

Moreover, "in the wake of *Banks* and *Clark*, no mandatory language was added to the CALCRIM instructions on special circumstances under section 190.2, subdivision (d). Optional language describing the *Banks* and *Clark* factors was added. (CALCRIM No. 703.) . . . [¶] [However,] the optional language that was added to the CALCRIM instructions in light of *Banks* and *Clark* does not require the jury to consider any additional questions or resolve any additional issues. As to reckless indifference, the optional language states, 'When you decide whether the defendant acted with reckless indifference to human life, consider all the evidence. No one of the following factors is necessary, nor is any one of them necessarily enough, to determine whether the defendant acted with reckless indifference to human life. Among the factors you may consider are,' followed by a list of the factors identified in *Clark*. (CALCRIM No. 703.) The optional language concerning major participant is identical. The only requirement imposed on the jurors is that they consider all the evidence. Everything else is optional (the jury 'may' consider the listed factors, among others). (CALCRIM No. 703.) [¶] . . . The issues resolved and questions answered by juries before and after *Banks* and *Clark* will be exactly the same." (*Jones*, *supra*, 56 Cal.App.5th at pp. 486-487 (conc. opn. of Menetrez, J.).)

On the other hand, other courts that have found a special circumstance finding insufficient to render a petitioner ineligible for relief have reasoned that *Banks* and *Clark* "construed section 190.2 in a significantly different, and narrower manner than courts had

12

previously construed the statute." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 958, review granted April 28, 2021, S267802.) Thus, these courts surmised that a petitioner with a pre-*Banks* and *Clark* special circumstance finding may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood." (*Torres*, at p. 1180; accord, *Harris*, at p. 948; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted November 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835.) To the extent the jury's finding on a felony-murder special circumstance is legally insufficient under *Banks* and *Clark*, it cannot refute a prima facie showing of entitlement to resentencing relief. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256.) Accordingly, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the trial court must first determine whether "the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*." (*Secrease*, at p. 264.)

Notwithstanding the conflict in authority between the courts of appeal, unless and until the Supreme Court tells us otherwise, we adhere to our opinion in *Jones*, *supra*, 56 Cal.App.5th 474. (Cal. Rules of court, rule 8.1115(e).) However, as we suggested in *Jones*, *supra*, at pages 478 through 479, a person in defendant's position is not wholly without a remedy. He or she may challenge prior special circumstance findings in a habeas proceeding. (See, e.g., *In re Scoggins* (2020) 9 Cal.5th 667, 676-683.) We

express no opinion as to whether in defendant's case there might be some procedural bar to such a proceeding at this point.

Therefore, we conclude that the trial court properly dismissed defendant's section 1170.95 petition.

## DISPOSITION

The order dismissing defendant's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
Acting P. J.

We concur:

CODRINGTON_____
J.

FIELDS_____
J.